IN THE IOWA DISTRICT COURT FOR MARION COUNTY

| | |
|---|---|
| LISA BALDUCHI,<br><br>   Plaintiff,<br><br>vs.<br><br>VERMEER MANUFACTURING COMPANY,<br><br>   Defendant. | NO.  LACV097988<br><br><br><br>ORIGINAL NOTICE |

TO THE ABOVE-NAMED DEFENDANT:   VERMEER MANUFACTURING COMPANY

     You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the defendant in this action.  A copy of the Petition is attached to this notice.  The attorneys for the plaintiff are Paige Fiedler and Amy Beck of Fiedler Law Firm, P.L.C., whose address is 8831 Windsor Parkway, Johnston, Iowa, 50131. Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

     You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Marion County.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

     If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at 515-286-3394 (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

 

_____
CLERK OF COURT
Marion County Courthouse
Knoxville, Iowa

# Iowa Judicial Branch

| | |
|---|---|
| Case No. | **LACV097988** |
| County | **Marion** |

Case Title   LISA BALDUCHI VS. VERMEER MANUFACTURING COMPANY

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 286-3394** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

Date Issued  **09/09/2022 04:01:27 PM**



District Clerk of Court or/by Clerk's Designee of  Marion          County
**/s/ Sue Beary**

IN THE IOWA DISTRICT COURT FOR MARION COUNTY

| | |
|---|---|
| LISA BALDUCHI,<br><br>   Plaintiff,<br><br>vs.<br><br>VERMEER MANUFACTURING COMPANY,<br><br>   Defendant. | NO. _____<br><br>PETITION and JURY DEMAND |

COMES NOW Plaintiff Lisa Balduchi and for her cause of action states the following:

## INTRODUCTION

1. This is an action arising under the Iowa Civil Rights Act ("ICRA") and Family and Medical Leave Act ("FMLA") challenging Defendants' illegal discrimination and retaliation against Plaintiff.

2. Plaintiff Lisa Balduchi ("Lisa") is a resident of Polk County, Iowa.

3. Defendant Vermeer Manufacturing Company ("Vermeer") is an Iowa corporation doing business in Marion County, Iowa.

4. The acts of which Plaintiff complains occurred in Marion County, Iowa.

## PROCEDURAL REQUIREMENTS

5. On approximately February 7, 2022, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against Defendant with the Iowa Civil Rights Commission.

6. On approximately June 10, 2022, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a right to sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

7. Lisa is a Registered Nurse.

1

8. On January 28, 2008, a third-party contractor hired Lisa to work in Defendant's Occupational Health Department.

9. Lisa continued that work until Defendant ended its contract with the third party in 2013 and began to provide occupational health services to its employees directly.

10. At the time of that transition, Defendant hired Lisa as its Occupational Health Clinic Manager.

11. Senior Environmental Health & Safety Manager Ron Stanhope became Lisa's direct supervisor.

12. Stanhope frequently smelled of alcohol in the workplace.

13. Lisa repeatedly reported Stanhope's drinking to his boss, Supervisor of Occupational Health Steve Flan.

14. Stanhope was often rude and condescending to Lisa.

15. When Lisa objected to Stanhope's treatment, he became angry and said, "This is my clinic, and I will do what I want."

16. In 2019, Lisa approached Stanhope about allowing the staff to switch from 8-hour shifts to 10-hour shifts.

17. Lisa believed this would help with the morale and employee retention.

18. Stanhope became livid and raised his voice.  He got very close to Lisa, towered over her, and pointed his finger in her face while saying, "I will not be threatened.  Anybody who tries to threaten me has another thing coming."

19. He proceeded to do this for about 10 minutes, making Lisa afraid for her safety.

20. When Stanhope left, another clinic employee checked on Lisa's well-being because they overheard Stanhope's loud and aggressive attack.

21. Stanhope was disrespectful and dismissive towards Lisa and her ideas—often in front of her team.

22. Stanhope was also demeaning toward most other women.

23. Lisa notified Steve Flan about her concerns regarding Stanhope, but Flan continued to dismiss them.

24. In December 2019, reports about a deadly illness called COVID-19 started to cause concern in the United States.

25. Defendant planned to send approximately 200 employees to a Las Vegas conference in March 2020.

26. Lisa cautioned Stanhope that gatherings of large groups may well put employees in danger.

27. Stanhope became visibly upset with Lisa and told her that she did not need to worry about it.

28. Lisa sent each employee to the conference with a travel kit containing hand sanitizer, gloves, masks, and other various items.

29. On March 13, 2020, President Donald Trump declared the COVID-19 pandemic a state of emergency.

30. At the time, many of Vermeer's employees were already at the conference in Las Vegas.

31. The clinic began to receive calls from employees who were getting sick and needed advice.

32. As the pandemic continued to spread, many employees and other individuals in the community called the clinic asking for advice. Due to the rising concern, Vermeer created a hotline specifically for COVID concerns.

33. Lisa's clinic was designated to receive calls from Iowa, South Carolina, Florida, and employees who worked in locations off-site.

34. The clinic received approximately 400 to 500 calls each day.

35. Lisa worked an extraordinary number of hours to try and keep up.

36. Lisa would often begin at 6:00 a.m. and work until 11:00 p.m. (or later).

37. For months at a time, Lisa worked seven days a week.

38. Steve Flan finally decided to bring in outside nurses to help with the workload.

39. Many of the outside nurses lacked the appropriate skills to respond in the occupational medicine setting, forcing Lisa and others to continue to work long hours.

40. At the beginning of the pandemic, Vermeer held frequent Zoom meetings with its executive team to discuss its plans and protocols regarding COVID.

41. Ron Stanhope was not included in these meeting invitations.

42. Despite this, every time there was a Zoom meeting, Stanhope would go to Lisa's office to watch.

43. Lisa had a small office that was barely big enough for two people to fit, especially given the risk of COVID.

44. Stanhope eventually decided to construct his own office in the clinic breakroom. The clinic space was already so small, adding another person increased the risk of contracting the virus.

45. In late March, Lisa and two other employees started working out of the Eco Center, although she still maintained her clinic office.

46. Stanhope decided to move from the clinic breakroom into Lisa's clinic office.

47. By July 2020, the workload became unbearable for Lisa and her staff who were working ridiculously long hours. It began to take a toll on their mental and physical health.

4

48. Flan overheard Lisa and her staff discussing their workload. He explained that he could arrange for them to get comp time.

49. Lisa and her staff understood that to mean they would be able to bank extra PTO for all the overtime hours they were working.

50. In November 2020, Chief Executive Officer Jason Andringa sent out an email stating that because of COVID, there would be no group gatherings or holiday parties. Employees were not even supposed to ride together in the same car.

51. Ignoring these directions, Stanhope planned and approved an employee Christmas party.

52. Lisa reminded him of Andringa's email and the dangers of group gatherings, but Stanhope disregarded her warnings.

53. Flan had to step in and explain to Stanhope that if he went through with the party, it could be a "career ending decision."

54. Stanhope reluctantly canceled the party, but he was never disciplined for going against Andringa's directive.

55. Stanhope decided to drive to Des Moines with another employee in the same car. This was again in complete disregard of Andringa's directions and violated company policy.

56. Stanhope refused to wear a mask in violation of company policy.

57. Stanhope lied about wearing a mask in violation of company policy.

58. In January 2021, Vermeer hired Nurse Heidi Scott, who was at least 20 years younger than Lisa.

59. Scott struggled with being late or not showing up to work at all.

60. Lisa tried to be understanding and allowed Scott to leave work early without using PTO.

5

61. Despite Lisa's leniency, Scott quickly burned through 80 hours of PTO.

62. Scott's work performance was poor, as she often neglected to sign drug screenings or was late finishing assignments. Many times, other employees needed to step in and finish her work.

63. In September 2021, Scott missed work because her "cat was sick."

64. Lisa disciplined Scott for her attendance and poor work quality.

65. Scott was angry with Lisa for disciplining her and wrote a formal resignation.

66. Around mid-July 2021, Lisa spoke with Stanhope about using some of her comp time. Stanhope claimed not to know what she was talking about and told her, "COVID is over, so it's back to normal hours."

67. Lisa called Flan to confirm that the staff would be able to use comp time as they had previously discussed. Flan avoided the question and never gave Lisa a definitive answer.

68. On July 30, 2021, Lisa contracted Respiratory Syncytial Virus ("RSV").

69. Lisa's RSV caused a buildup of fluids in her ears, vision problem and difficulty breathing.

70. Lisa was on medical leave from approximately July 30 through September 7, 2021.

71. Stanhope called Lisa while she was at home and told her, "They're watching you."

72. On September 8, 2021, Lisa returned to work to find Stanhope had taken over her office.

73. On September 13, Lisa was notified of a meeting with Flan and Human Resource Partner Kimberly Steele. the next day.

74. At the September 14 meeting, Flan and Steele told Lisa they received complaints that she engaged in favoritism and was not "inclusive."

75. Lisa had never been warned, disciplined, or received criticism about any of these alleged concerns.  In fact, this was the first Lisa had heard about them.

76. Defendants had always given Lisa positive performance evaluations.

77. Lisa asked about what opportunities she would have to address the concerns, but they said she was fired.

78. Immediately after Lisa's termination, Vermeer urged Scott to rescind her resignation and remain employed—ignoring her attendance problems, poor work ethic, lack of experience, and shoddy work product.

79. Vermeer then assigned Scott many of Lisa's clinic management responsibilities.

80. Vermeer has a history of being lenient with male managers and strict with female managers.

81. Stanhope and at least three male managers are examples of this differential treatment.

82. Stanhope repeatedly put staff at risk because of his poor decisions with alcohol usage, COVID protocols, and other violations of policy.

83. Flan was advised on multiple occasions of Stanhope's alcohol usage, but Stanhope remained employed.

84. Dan Brigs was Plant Manager 1 and 2.  He was accused of sexual misconduct by a female employee.  He was allowed to leave for a short time, then return on a different shift.

85. Jim Rosenbloom oversaw the Environmental Health Advisors and was also accused of sexual misconduct.  Instead of firing him, he was demoted to third shift.

86. Plant Manager 3 Scott Berry was also accused of sexual misconduct.  He was able to keep his same position.

7

87. Vice President Dave Wisniewski has been the subject of multiple complaints of sexual misconduct, but he remains employed.

88. In comparison, Defendant fired Medical Leave Coordinator Patti Maloy for allegedly leaving a notebook on her desk that contained personal information about employees.

89. Defendant fired Internal Auditor Manager Tracy Kemp-Douglas with no explanation at all.

90. At the time Lisa was fired, she was 64 years old and the oldest female in the Department.

91. Defendant Ron Stanhope was an employee and agent of Defendant Vermeer Manufacturing Company, acting at all material times within the scope of his employment and agency.

92. Defendant Steve Flan was an employee and agent of Defendant Vermeer Manufacturing Company, acting at all material times within the scope of his employment and agency.

93. Jason Andringa was an employee and agent of Defendant Vermeer Manufacturing Company, acting at all material times within the scope of his employment and agency.

94. Heidi Scott was an employee and agent of Defendant Vermeer Manufacturing Company, acting at all material times within the scope of her employment and agency.

95. Crystal Salfen was an employee and agent of Defendant Vermeer Manufacturing Company, acting at all material times within the scope of her employment and agency.

96. Kimberly Steele was an employee and agent of Defendant Vermeer Manufacturing Company, acting at all material times within the scope of her employment and agency.

**COUNT I**
**VIOLATIONS OF THE IOWA CIVIL RIGHTS ACT**
**AGE AND SEX DISCRIMINATION**

8

97. Plaintiff repleads paragraphs 1 through 96 as if fully set forth herein.

98. Defendant discriminated against Plaintiff with respect to her employment.

99. Plaintiff's age and/or her sex, either separately or in combination, were motivating factors in Defendant's discrimination.

100. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including, but not limited to, mental and emotional distress, fear, anguish, humiliation, betrayal, medical expenses, stress, lost enjoyment of life, lost wages, future earnings, and other benefits of employment.

WHEREFORE, Plaintiff Lisa Balduchi demands judgment against Defendant in an amount that will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and postjudgment interest, for attorney fees including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## DISABILITY DISCRIMINATION AND RETALIATION

101. Plaintiffs replead paragraphs 1 through 100 as if fully set forth herein.

102. Plaintiff was disabled within the meaning of the ICRA.

103. Plaintiff's RSV substantially limited one or more major life activities, including hearing, breathing, and sight.

104. Plaintiff's RSV also substantially limited the normal functioning of her respiratory, cardiovascular, and immune systems.

105. Defendant discriminated against Plaintiff.

106. Plaintiff's disability was a motivating factor in Defendant's discrimination.

9

107. Plaintiff engaged in protected activity by requesting the reasonable accommodation of medical leave.

108. Defendant retaliated against Plaintiff and fired her.

109. Plaintiff's request for reasonable accommodation was a motivating factor in Defendant's retaliation.

110. As a result of Defendant's illegal acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to mental and emotional distress, embarrassment, betrayal, stress, loss of enjoyment of life, medical expenses, lost wages, and employment benefits.

WHEREFORE, Plaintiff Lisa Balduchi demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable relief, for prejudgment and postjudgment interest, for attorney fees including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT III
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

111. Plaintiff repleads paragraphs 1 through 110 as if fully set forth herein.

112. Plaintiff was entitled to leave under the FMLA.

113. Plaintiff invoked her right to leave under the FMLA.

114. Defendant interfered with Plaintiff's right to take leave under the FMLA.

115. Defendant failed to restore Plaintiff to the position she held when she began her leave.

116. Defendant discriminated against Plaintiff and fired her for exercising her rights under the FMLA.

117. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to lost wages and employment benefits.

WHEREFORE, Plaintiff Lisa Balduchi demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for liquidated damages, for appropriate equitable relief, for prejudgment and postjudgment interest, for attorney fees including litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Family Medical Leave Act.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

                                           */s/ Paige Fiedler*
                                           FIEDLER LAW FIRM, P.L.C.
                                           Paige Fiedler AT0002496
                                           paige@employmentlawiowa.com
                                           Amy Beck AT0013022
                                           amy@employmentlawiowa.com
                                           8831 Windsor Parkway
                                           Johnston, IA 50131
                                           Telephone: (515) 254-1999
                                           Fax: (515) 254-9923
                                           ATTORNEY FOR PLAINTIFF

IN THE IOWA DISTRICT COURT FOR MARION COUNTY

| | |
|---|---|
| LISA BALDUCHI,<br><br>Plaintiff,<br><br>vs.<br><br>VERMEER MANUFACTURING COMPANY,<br><br>Defendant. | NO. LACV097988<br><br><br><br><br><br>**ACCEPTANCE OF SERVICE** |

I, Michael R. Reck, hereby acknowledge receipt and accept service of the Original Notice and Petition and Jury Demand on behalf of **Vermeer Manufacturing Company**. This acknowledgement is taking place in Des Moines, Iowa on the 14th day of September, 2022.

Michael R. Reck
Belin McCormick, P.C.
666 Walnut St., Suite 2000
Des Moines, Iowa 50309
**ATTORNEYS FOR DEFENDANT**